IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CATANIA-SPAGNA CORPORATION,

        Plaintiff,

v.

SUPREME OIL COMPANY, INC. d/b/a
ADMIRATION FOODS,

        Defendant.

Civil Action No. 11-cv-10967-DJC

## CATANIA'S ANSWER TO ADMIRATION'S COUNTERCLAIMS

Catania-Spagna Corporation ("Catania" or "Plaintiff") answers Supreme Oil Company,

Inc. d/b/a Admiration Food's ("Admiration" or "Defendant") counterclaims as follows:

### THE PARTIES

*1.     According to Counterdefendant Catania, it is a Massachusetts corporation having its principal place of business at 1 Nemco Way, Ayer, MA, 01432.*

    <u>Answer to No. 1</u>:    Admits.

*2.     Counterplaintiff Supreme is a Delaware corporation with its principal place of business at 80 South Dean Street, Englewood, NJ 07631.*

    <u>Answer to No. 2</u>:    Admits.

*3.     This Counterclaim is brought under 28 U.S.C. §§2201 and 2202 for a declaratory judgment declaring United States Trademark Registration No. 1,040,682 to be invalid and not infringed under the Lanham Act, 15 U.S.C. § 1051 et seq; for cancellation of the Registration under 15 U.S.C. §1119; for trademark infringement, unfair competition and false designation of origin arising under the Lanham Act, 15 U.S.C. § 1051, et seq. and common law, and for damages resulting from the fraudulently procured Registration under 15 U.S.C. §1120. Subject matter jurisdiction is proper under 28 U.S.C. §§1331, 1338(a), 2201 and 2202. Venue is proper in this District under 28 U.S.C. §1391.*

- 1 -

Answer to No. 3:        Catania admits that subject matter jurisdiction and venue are

proper, and that Admiration has brought the various claims listed, but denies the remaining

factual and legal allegations.

4.      *This Court has jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331*
*and 1338.*

Answer to No. 4:        Admits.

5.      *Jurisdiction is also proper under 28 U.S.C. § 1332 because Catania is a*
*Massachusetts corporation, Supreme is headquartered in New Jersey and incorporated in*
*Delaware, and greater than $75,000 is believed to be in controversy.*

Answer to No. 5:        Admits.

6.      *Catania's goods have been sold in Massachusetts.*

Answer to No. 6:        Admits.

7.      *Catania's edible oils have been and continue to be sold Massachusetts.*

Answer to No. 7:        Admits.

8.      *Catania's edible oils bearing the SUPREME mark have been sold in*
*Massachusetts.*

Answer to No. 8:        Admits.

9.      *Catania has purposefully directed the marketing and sale of its edible oils bearing*
*the SUPREME mark to Massachusetts.*

Answer to No. 9:        Admits.

10.     *This Court has personal jurisdiction over Catania.*

Answer to No. 10:        Admits.

11.     *Venue is proper in this District pursuant to 28 U.S.C. § 1391.*

Answer to No. 11:        Admits.

## COUNTERPLAINTIFF AND ITS RIGHTS IN THE SUPREME TRADEMARK

*12.    Supreme has been serving the restaurant and food industry in the United States under the name "Supreme" for over 60 years.*

<u>Answer to No. 12</u>:    Denies.

*13.    Supreme sells a variety of food products including, but not limited to, edible oils, including olive oil, blended oil, vegetable oil, and frying oil including deep frying oil.*

<u>Answer to No. 13</u>:    Admits.

*14.    Supreme distributes its edible oils through many channels, including, retail, food service, bulk, specialty, private label, and export channels.*

<u>Answer to No. 14</u>:    Catania does not have sufficient information to determine the truth

or falsity of the allegations and accordingly denies the same.

*15.    Supreme is a family-owned and operated company.*

<u>Answer to No. 15</u>:    Catania does not have sufficient information to determine the truth

or falsity of the allegations and accordingly denies the same.

*16.    Supreme has a reputation for selling high quality products.*

<u>Answer to No. 16</u>:    Denies.

*17.    Supreme adopted the SUPREME trade name and trademark in 1945.*

<u>Answer to No. 17</u>:    Denies.

*18.    Since 1945, Supreme has produced, marketed, and distributed edible oil and edible oil derived products under the SUPREME mark throughout the United States.*

<u>Answer to No. 18</u>:    Denies.

*19.    Supreme has sold substantially all its products, including substantial quantities of edible oil under the SUPREME mark or trade identity in a variety of forms and designations, including the house marks A SUPREME OIL COMPANY, SUPREME OIL CO., the designation SUPREME OIL and the word SUPREME. Defendant Counterplaintiff's Exhibit 1, attached hereto, reflects the graphics imprinted on tins or cans containing Supreme's edible oil products during the time period Supreme operated a plant at Long Island City, New York, which plant was operated between 1958 – 1965.*

2392384.1

<u>Answer to No. 19</u>:      Catania admits that Admiration has used a logo showing "A Supreme Oil Company" as a trade name, but does not have sufficient information to determine the truth or falsity of the remaining allegations and accordingly denies the same.

20.      *Supreme's sales of edible oil under the SUPREME mark are an important component of its business and the trade name Supreme is Supreme's primary identification to its customers and the public, has been so for many years, and has been recognized as a distinctive indicator of source by its customers and the public since long prior to Catania's claimed date of first use.*

<u>Answer to No. 20</u>:      Denies.

21.      *Supreme filed an application for a United States federal trademark registration for the mark A SUPREME OIL COMPANY on May 19, 1994, which application was published for opposition on October 1, 1996.*

<u>Answer to No. 21</u>:      Catania admits that Admiration filed for a U.S. federal trademark registration on May 19, 1994 and that the application was published for opposition on October 1, 1996, but denies that the application applies to the mark A SUPREME OIL COMPANY in any form beyond that shown in the application.

22.      *Supreme's application matured into a Registration on the Principal Register of the United States Patent and Trademark Office on December 24, 1996 under Registration No. 2,024,804, neither Catania, nor anyone else, having opposed that registration.*

<u>Answer to No. 22</u>:      Admits.

23.      *The goods listed in Supreme's A SUPREME OIL COMPANY trademark registration are salad oils, margarine, shortenings, soup bases, pickle products, namely, sweet mix pickles, jardinière and pepperoncini, processed cherries, processed Spanish olives, pickled onions, edible oils, processed olives, olive oil, marinated mushrooms, processed beans, processed vegetables and cole slaw (in International Class 29) and mayonnaise, salad dressings, tartar sauce, vinegars, spices, capers, mustards, rice and relish (in International Class 30).*

<u>Answer to No. 23</u>:      Admits.

24.      *Supreme's registration 2,024,804 is valid.*

<u>Answer to No. 24</u>:      Denies.

25.      *Supreme's registration 2,024,804 is incontestable under 15 U.S.C. § 1065.*

- 4 -

<u>Answer to No. 25</u>:       Admits, though the registration may still be challenged as set forth

in 15 U.S.C. § 1064 and related case law.

26.       *A copy of Supreme's trademark Registration No. 2,024,804 is attached as Defendant Counterplaintiff's Exhibit 2.*

<u>Answer to No. 26</u>:       Admits.

27.       *By virtue of Supreme's longstanding use and sales under the marks and trade identifiers SUPREME, SUPREME OIL, SUPREME OIL COMPANY, SUPREME OIL CO. and A SUPREME OIL COMPANY, "SUPREME" has become well-known, and is recognized by customers and the public as being associated with Supreme.*

<u>Answer to No. 27</u>:       Denies.

28.       *The SUPREME mark as used on or in connection with products sold by Supreme has acquired goodwill and a reputation for quality.*

<u>Answer to No. 28</u>:       Denies.

## COUNTERDEFENDANT'S UNAUTHORIZED<br>USE OF A CONFUSINGLY SIMILAR MARK

29.       *Catania sells edible oils under a variety of brands including,* inter alia, *LA SPAGNOLA (which means "the Spanish"), MARCONI (which is a surname), SICILIA (the Italian spelling for the geographic location Sicily) ATLANTIC ORGANIC (the geographic term Atlantic, and the generic term Organic) and CASA MIA (which means "My House").*

<u>Answer to No. 29</u>:       Catania admits that sells edible oils under a variety of brands

including those listed, but denies the remaining allegations, in particular any implications that

may be drawn from those allegations.

30.       *Catania has been aware of Supreme for many decades, on information and belief, since 1945.*

<u>Answer to No. 30</u>:       Due to the fact that no one involved with Catania in 1945 is still

alive today, Catania does not have sufficient information to determine the truth or falsity of the

allegations and accordingly denies the same.

2392384.1

*31.      Catania was aware of Supreme at the time it filed its trademark application for SUPREME.*

Answer to No. 31:      Catania admits that it was aware of the company Supreme Oil Company when Catania filed its application for SUPREME.

*32.      Catania was aware, prior to 1975, that Supreme's packaging, for a variety of brands, included the house mark A SUPREME OIL COMPANY on the packaging of edible oils and other products that Supreme sold, and still sells.*

Answer to No. 32:      Catania admits that prior to 1975 Admiration had either a logo or the words "A Supreme Oil Company" on its packaging for edible oils and other products that Admiration sold, and still sells, but denies the remaining allegations.

*33.      Supreme Oil Company is also a trade name, which has come to be recognized by customers under the single word "Supreme."*

Answer to No. 33:      Catania admits that "Supreme Oil Company" is a trade name, but denies the remaining allegations.

*34.      Supreme Oil Company is a trademark.*

Answer to No. 34:      Denies.

*35.      Prior to 2010, customers commonly used the word "Supreme" to identify Defendant, Counterplaintiff, Supreme Oil Company, or it's [sic] predecessors, as the source of Supreme's edible oil products.*

Answer to No. 35:      Denies.

*36.      Prior to 2010, the designations identifiers SUPREME, SUPREME OIL, SUPREME OIL COMPANY, SUPREME OIL CO. and A SUPREME OIL COMPANY, were used as trademark and trade identifiers to designate Supreme as the source of products including edible oil products.*

Answer to No. 36:      Denies.

*37.      In or about 2010, Supreme designed a new, special form trademark, using distinctive components including the word SUPREME, a graphic design of a Chef, as shown in US Trademark Registration Number 3,964,913, and a quadrilateral border around the word, as shown in US Trademark Registration No. 2,225,315 as a trademark on edible oils (hereafter sometimes "SUPREME Chef Logo"), described in Supreme's trademark application as:*

*"The mark consists of an image of a chef, wearing a chef's jacket and chef's hat, with a large spoon in his raised left hand, all in white, outlined in black with black hair, peach skin and a red kerchief tied around the chef's neck, to the left of a red quadrilateral, outlined in white, then outlined in black, and outlined in white again with the word "SUPREME" in white, outlined in gray, then outlined in black appearing in the middle of the quadrilateral, and the word "OIL" in red, outlined in black appearing beneath the lower right hand corner of the quadrilateral."*

Answer to No. 37:   Catania admits that Admiration's U.S. Trademark Application No.

85/107,350 contains, in part, the recited description, but Catania does not have sufficient

information to determine the truth or falsity of the remaining allegations and accordingly denies

the same.

38.    *In 2010, Supreme began marketing and selling edible oils specifically designed for use in deep frying under the foregoing composite mark, which category and class of goods are consistent with a variety of cooking oils that Supreme has sold over the years.*

Answer to No. 38:   Catania admits that in 2010 Admiration started selling edible oils

under the mark shown in U.S. Trademark Application No. 85/107,350, but denies the remaining

allegations.

39.    *The word SUPREME under which Catania sells and markets edible oils is the dominant feature and is common to Supreme's registered A SUPREME OIL COMPANY mark and Supreme's identifiers SUPREME, SUPREME OIL, SUPREME OIL COMPANY, SUPREME OIL CO. marks and trade identity designations.*

Answer to No. 39:   Catania admits that it sells and markets edible oils under the mark

SUPREME, but denies the remaining allegations.

40.    *Catania did not have and does not have Supreme's authorization to sell edible oils under the mark SUPREME.*

Answer to No. 40:   Catania admits that it has no express authorization from

Admiration to use SUPREME as a mark, but since Catania is the senior user of that mark,

Admiration's authorization is unnecessary.

41.    On information and belief, Catania's use of SUPREME as a trademark on edible oils was intended to wrongfully capitalize on the goodwill acquired by Supreme in the SUPREME mark over the many years that Supreme used the SUPREME mark on its edible oils prior to Catania's use.

Answer to No. 41:    Denies.

42.    On information and belief, Catania continues to market edible oils under the mark SUPREME.

Answer to No. 42:    Admits.

43.    On August 13, 2010, Supreme filed U.S. Trademark Application Serial No. 85-107,350 for the following stylized logo for edible oils ("the '350 Application").

Answer to No. 43:    Catania admits that Admiration filed U.S. Trademark Application

Serial No. 85/107,250 for a stylized logo for edible oils, but denies that the logo is shown in

Admiration's counterclaims.

44.    Supreme's filing of the '350 Application is part of Supreme's continuing efforts to protect its SUPREME mark for edible oils.

Answer to No. 44:    Denies.

45.    On May 31, 2011, the '350 Application was published for opposition.

Answer to No. 45:    Admits.

46.    Catania has expressed an intent and has sought an extension of time to oppose the '350 Application.

Answer to No. 46:    Admits.

47.    Prior to receiving a copy of this Complaint, Supreme's management was not aware of Catania's claim of exclusive rights to SUPREME for all edible oils. On or about December 2, 2010, Supreme received a photocopy of a registration certificate naming Catania, but the certificate was not accompanied by any cover letter or other explanation. A contemporaneous look at Catania's website did not reveal any labeling for a Supreme product, and does not list Supreme on the page purporting to identify Catania's "Top Brands".

Answer to No. 47:    Catania states that it sent on or about December 2, 2010 a letter

enclosing a photocopy of a U.S. trademark registration certificate, but does not have sufficient

information to determine the truth or falsity of the remaining allegations and accordingly denies

the same.

*48.     Catania had constructive notice of Supreme's ownership of the A SUPREME OIL COMPANY Mark by virtue of 15 U.S.C. § 1072 and prior to 1975, Catania had actual notice of Supreme's rights.*

Answer to No. 48:     Catania admits that it had constructive notice of the existence of

U.S. Trademark Registration No. 2,024,804, but denies the remaining allegations.

*49.     Catania's wrongful actions were and are willful and made with knowledge of Supreme's use and ownership of SUPREME.*

Answer to No. 49:     Denies.

## COUNT I
### (Trademark Cancellation Under 15 U.S.C. § 1114 and Common Law)

*50.     The allegations of the paragraphs above are incorporated by reference.*

Answer to No. 50:     No response is necessary beyond those responses given above.

*51.     On information and belief, shortly after World War II, Joseph O. Basile began Catania-Spagna Corporation. He was personally involved in sales and on information and belief developed a familiarity with the edible oil market.*

Answer to No. 51:     Admits.

*52.     At about the same time, Supreme, then a sole proprietorship, began using SUPREME OIL CO. as a trade name and as a house mark, initially for edible oils, and thereafter for a variety of products. Supreme's product line always included edible oil.  Prior to Catania's claimed date of first use Supreme also used the trade name Supreme to identify a family of interrelated business entities including at least the sole proprietorship identified as SUPREME and SUPREME OIL CO. and at least a New York Corporation "SUPREME SHORTENING & OIL CORP."*

Answer to No. 52:     Catania does not have sufficient information to determine the truth

or falsity of the  allegations and accordingly denies the same.

*53.     On information and belief, Joseph O. Basile was aware of the use of SUPREME, SUPREME OIL CO. and SUPREME OIL COMPANY by Supreme.*

Answer to No. 53:     Admits that Joesph O. Basile was at some point aware of the use of "Supreme Oil Company" by Admiration.

54.     On information and belief, Joseph D. Basile is the son of Joseph O. Basile and joined Catania some time thereafter.

Answer to No. 54:     Admits.

55.     On information and belief, Joseph D. Basile became familiar with other entities in the edible oil business including Supreme and Supreme's use of SUPREME OIL CO. The aforementioned knowledge occurred, on information and belief, prior to 1975.

Answer to No. 55:     Admits.

56.     On March 20, 1975, Joseph Basile (no middle initial indicated) made a Declaration under penalty of perjury, "that to the best of his knowledge and belief no other unrelated person, firm, corporation or association has the right to use said mark in commerce, either in the identical form or in such near resemblance thereto as to be likely, when applied to the goods of such other person, to cause confusion, or to cause mistake or to deceive".

Answer to No. 56:     Admits.

57.     The foregoing Declaration was made for the purpose of obtaining favorable treatment of Catania's trademark application for SUPREME.

Answer to No. 57:     Catania admits that the declaration was submitted to the U.S. Patent and Trademark Office as part of Catania's application for the mark SUPREME, but otherwise denies any remaining allegations.

58.     On information and belief, declarant Joseph Basile was either Joseph O. or Joseph D.

Answer to No. 58:     Admits.

59.     On information and belief, both Joseph O. and Joseph D. Basile had actual knowledge of Supreme and Supreme's use of SUPREME OIL CO. at the time Joseph Basile made the foregoing declaration under penalty of perjury.

Answer to No. 59:     Admits.

60.     On information and belief, if there is a likelihood of confusion between Supreme's use of Supreme on edible oil, and Catania's use on olive oil, the Declaration was false when made, and was made with the intent to deceive the US Patent and Trademark Office for the

2392384.1

*purpose of obtaining a registration with the intent to deceive the US Patent and Trademark Office, which relied on that statement in issuing the registration.*

<u>Answer to No. 60</u>:     Denies.

61.     *Based on the foregoing, the registration was procured by fraud and is void* ab initio.

<u>Answer to No. 61</u>:     Denies.

62.     *Registration No. 1,040,682 is invalid and unenforceable, a defense under 15 U.S.C. §1115 (b) (1) is established and the registration should be cancelled by the Court under 15 U.S.C. §1119.*

<u>Answer to No. 62</u>:     Denies.

63.     *The statements made, omissions not explained, and the resultant procurement of Registration No. 1,040,682 by fraud have caused injury to Supreme.*

<u>Answer to No. 63</u>:     Denies.

64.     *Catania is liable for damages under 15 U.S.C. §1120.*

<u>Answer to No. 64</u>:     Denies.

### COUNT II
### (Declaration of Noninfringement Under 15 U.S.C. § 1114 and Common Law)

65.     *The allegations of the paragraphs above are incorporated by reference.*

<u>Answer to No. 65</u>:     No response is necessary beyond those responses given above.

66.     *Catania argued, in order to obtain its registration that the: "trademark SUPREME is obviously a weak mark and therefore must be narrowly construed.  In the instant case the applicant has sought registration of SUPREME for olive oil.  The references cited against the applicant's mark are for the marks SUPREME used in one instance for lard and cottonseed oil for salads and cooking and in the other instance for oleomargarine. In light of the difference between the goods and in light of the obvious weak nature of SUPREME, the multiple registrations for SUPREME in the food field and in other fields, it is believed that no likelihood of confusion exists. Olive oil is not normally sold in the same area of a supermarket as is oleomargarine. Similarly, customers will generally distinguish olive oil from lard or cottonseed oil."*

<u>Answer to No. 66</u>:     Catania admits that in 1975 it made the recited argument to the

U.S. Patent and Trademark Office.

- 11 -

67.     *The product to which Supreme has applied its SUPREME Chef Logo in 2010 is a specific oil formulation for deep frying poultry such as turkey at Thanksgiving.  It is a blended oil including, in substantial part, peanut oil, but no olive oil.*

Answer to No. 67:     Catania does not have sufficient information to determine the truth

or falsity of the  allegations and accordingly denies the same.

68     *Supreme's adopted and used SUPREME in a variety of forms prior to Catania's use or registration and has been continuously used by Supreme from a date prior to the registration of the Catania's mark under this Act.*

Answer to No. 68:     Denies.

69.     *In light of Supreme's prior use and US Trademark Registration No. 2,024,804 Catania cannot be harmed by the continued use of SUPREME by Supreme.*

Answer to No. 69:     Denies.

70.     *For many years Catania had knowledge of reference and identification by customers of Supreme as "Supreme" and as a source of a variety of edible oils, as well as the use by Supreme of SUPREME in a house mark for a variety of products including edible oils.*

Answer to No. 70:     Denies.

71.     *Catania took no action regarding the aforementioned usage, or regarding Supreme's US Trademark Registration No. 2,024,804.*

Answer to No. 71:     Catania denies that it had any obligation to take any action.

72.     *It would be a hardship on Supreme to have its use of its name on its products restricted by threat of infringement, particularly after Catania argued that the use of an identical word on types of oil such as olive oil could be distinguished from use of the same word on types of oil such as cottonseed oil.*

Answer to No. 72:     Denies.

73.     *Catania is estopped based on its representations in the file wrapper that lead to its registration.*

Answer to No. 73:     Denies.

74.     *Catania's claims are barred by laches.*

Answer to No. 74:     Denies.

75.     *Catania is equitably estopped.*

<u>Answer to No. 75</u>:     Denies.

75.     *There is no likelihood of confusion between Catania's SUPREME olive oil and Supreme's SUPREME peanut oil, or Supreme's use of SUPREME OIL COMPANY as a house mark for any edible oil or condiment, including olive oil.*

<u>Answer to No. 75</u>:     Catania denies that there is no likelihood of confusion between

Catania's SUPREME mark and Admiration's use of a SUPREME mark, but otherwise states that

there is no likelihood of confusion between Admiration's past usage of the trade name "A

Supreme Oil Company" and Catania's use of the SUPREME mark and denies any remaining

allegations.

## COUNT III
### (Trademark Infringement Under 15 U.S.C. § 1114 and Common Law)

76.     *The allegations of the paragraphs above are incorporated by reference.*

<u>Answer to No. 76</u>:     No response is necessary beyond those responses given above.

77.     *Supreme is the owner of United States trademark Registration No. 2,024,804 for the mark A SUPREME OIL COMPANY on salad oils, margarine, shortenings, soup bases, pickle products, namely, sweet mix pickles, jardinière and pepperoncini, processed cherries, processed Spanish olives, pickled onions, edible oils, processed olives, olive oil, marinated mushrooms, processed beans, processed vegetables and cole slaw (in International Class 29) and mayonnaise, salad dressings, tartar sauce, vinegars, spices, capers, mustards, rice and relish (in International Class 30).*

<u>Answer to No. 77</u>:     Catania admits that Admiration is the purported owner of U.S.

Trademark Registration No. 2,024,804 and the registration covers the recited goods, but

otherwise denies the remaining allegations.

78.     *Since long prior to 1975, Supreme has used SUPREME, SUPREME OIL, SUPREME OIL CO., SUPREME OIL COMPANY and A SUPREME OIL COMPANY as marks and trade identifiers and SUPREME by itself, in those forms, and as the common feature has become well-known, and is recognized by customers and the public as a distinctive indicator of source, being associated with Supreme, and therefore had and continues to have secondary meaning as an indicator of source of the aforementioned goods.*

Answer to No. 78:   Denied.

79.    *Without authorization from Supreme, Catania has used and continues to use the mark SUPREME in connection with edible oil.*

Answer to No. 79:   Catania admits that it has no express authorization from

Admiration to use SUPREME as a mark, but since Catania is the senior user of that mark,

Admiration's authorization is unnecessary.  Catania further admits that it has used and continues

to use the mark SUPREME in connection with edible oil.

80.    *Catania has infringed Supreme's SUPREME mark by using a mark that is likely to cause confusion, mistake and/or deception as to source, sponsorship or affiliation.*

Answer to No. 80:   Denies.

81.    *Catania's use of the SUPREME mark is knowing and willful and with the intent to trade off the goodwill established by Supreme in its SUPREME mark.*

Answer to No. 81:   Denies.

82.    *Unless enjoined by the Court, Catania's infringement will continue and will cause Supreme to suffer irreparable harm to its business, reputation and goodwill for which there is no adequate remedy at law.*

Answer to No. 82:   Denies.

83.    *Supreme is entitled to damages for Catania's infringement, in an amount to be determined at trial.*

Answer to No. 83:   Denies.

84.    *Supreme is entitled to injunctive relief stopping Catania's trademark infringement.*

Answer to No. 84:   Denies.

## COUNT IV
## (Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(a))

85.    *The allegations of the paragraphs above are incorporated by reference.*

Answer to No. 85:   No response is necessary beyond those responses given above.

- 14 -

86.     Supreme's SUPREME mark, as used in connection with edible oil including olive oil, is known for quality and value.

Answer to No. 86:     Denies.

87.     Supreme's SUPREME mark, as used in connection with edible oil including olive oil, has become associated with Supreme through continuous, extensive and widespread use.

Answer to No. 87:     Denies.

88.     Catania sells edible oils under the mark SUPREME to the same class of customers who purchase edible oils from Supreme under the mark SUPREME.

Answer to No. 88:     Admits, though Catania further states that Admiration only began selling edible oils under the mark SUPREME in 2010.

89.     Catania's use of a confusingly similar mark is likely to cause confusion, mistake or deception as to affiliation, connection or association between Supreme and Catania.

Answer to No. 89:     Denies, though Catania states that Admiration's recent use of the mark SUPREME alone is likely to cause confusion, mistake or deception as to affiliation, connection or association between Supreme and Catania.

90.     Catania's wrongful actions have been willful, malicious, and fraudulent with knowledge of the likelihood of confusion and with intent to confuse or deceive.

Answer to No. 90:     Denies.

91.     Unless enjoined by the Court, Catania's wrongful actions will continue and will cause Supreme to suffer irreparable harm to its business, reputation and goodwill for which there is no adequate remedy at law.

Answer to No. 91:     Denies.

92.     Supreme is entitled to damages for Catania's wrongful actions, in an amount to be determined at trial.

Answer to No. 92:     Denies.

93.     Supreme is entitled to injunctive relief stopping Catania's wrongful actions.

Answer to No. 93:     Denies.

## COUNT V
### (Common Law Unfair Competition)

94.     *The allegations of the paragraphs above are incorporated by reference.*

Answer to No. 94:      No response is necessary beyond those responses given above.

95.     *In addition to its right under the Lanham Act, Supreme has common law rights in the SUPREME mark in connection with edible oils.*

Answer to No. 95:      Denies.

96.     *By the conduct described above, Catania has engaged in unfair competition under federal common law and the common law of the Commonwealth of Massachusetts and New Jersey.*

Answer to No. 96:      Denies.

97.     *Catania knew, or in the exercise of reasonable care, should have known, that its conduct was likely to mislead the public.*

Answer to No. 97:      Denies.

98.     *Catania's wrongful actions have been willful, malicious, and fraudulent with knowledge of the likelihood of confusion and with intent to confuse or deceive.*

Answer to No. 98:      Denies.

99.     *Unless enjoined by the Court, Catania's wrongful actions will continue and will cause Supreme to suffer irreparable harm to its business, reputation and goodwill for which there is no adequate remedy at law.*

Answer to No. 99:      Denies.

100.     *Supreme is entitled to damages for Catania's wrongful actions, in an amount to be determined at trial.*

Answer to No. 100:      Denies.

101.     *Supreme is entitled to injunctive relief stopping Catania's wrongful actions.*

Answer to No. 101:      Denies.

2392384.1

## AFFIRMATIVE DEFENSES

1.      The Counterclaims fail to state a claim upon which relief may be granted.

2.      Admiration has engaged in a course of conduct with respect to dealings with Catania by virtue of which Admiration is barred from obtaining any relief sought in the Counterclaims under the principles of estoppel, laches, waiver and/or unclean hands.

## RELIEF REQUESTED

In addition to the relief requested in its Complaint in this action, Catania requests that this Court enter judgment for Catania and against Admiration on each of Admiration's Counterclaims.


CATANIA-SPAGNA CORPORATION

By its attorneys,


Date:   July 15, 2011                          /s/ John L. Strand
                                               Michael N. Rader (BBO #646990)
                                               mrader@wolfgreenfield.com
                                               David Wolf (BBO #532160)
                                               dwolf@wolfgrenfield.com
                                               John L. Strand (BBO #654985)
                                               jstrand@wolfgreenfield.com
                                               WOLF, GREENFIELD & SACKS, P.C.
                                               600 Atlantic Avenue
                                               Boston, MA 02210
                                               Tel: 617.646.8000
                                               Fax: 617.646.8646

2392384.1

## <u>CERTIFICATE OF SERVICE</u>

   I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF).  Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.


        /s/ John L. Strand_____
        John L. Strand

2392384.1