IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CATANIA-SPAGNA CORPORATION,<br><br>      Plaintiff,<br><br>v.<br><br>SUPREME OIL COMPANY, INC. d/b/a<br>ADMIRATION FOODS,<br><br>      Defendant. | Civil Action No. 11-10967-DJC |

## JOINT LOCAL RULE 16.1 STATEMENT

Catania-Spagna Corporation ("Catania" or "Plaintiff") and Supreme Oil Company, Inc. d/b/a Admiration Foods ( "Defendant") submit this Joint Statement pursuant to Local Rule 16.1 and the Court's Notice of Scheduling Conference (D.I. 13).

**I.   CONCISE STATEMENT OF THE PARTIES'
POSITIONS ON LIABILITY AND RELIEF SOUGHT**

    **A.   <u>Catania's Position</u>**

Supreme Oil Company, Inc., d/b/a Admiration Foods ("Admiration") (*see* <admirationfoods.com>) infringes Catania's trademark SUPREME by selling edible oils under the marks SUPREME and SUPREME OIL.  Catania has been the exclusive owner of the mark SUPREME on edible oils since the 1970s, and has had a federal registration (now incontestable) on the SUPREME mark since 1994.  Admiration's recent use of the SUPREME and SUPREME OIL marks on edible oils creates a likelihood of confusion between Admiration and Catania (with which the SUPREME mark on edible oils has been associated exclusively for decades).

Catania recognizes that Admiration has used the <u>trade name</u> "Supreme Oil Company" in the past to identify the <u>company</u> Supreme Oil Company.  Before 2010, however, Admiration had

never used "Supreme Oil Company," let alone SUPREME or SUPREME OIL, as a <u>trademark</u> for its <u>products</u>. Admiration's historical use of "Supreme Oil Company" as a trade name (as opposed to a trademark or a brand) is demonstrated even in Exhibit 1 to Admiration's own Answer (D.I. 11) – an oil can on which the "Supreme Oil Co." name appears in small type at the bottom of the can while "Admiration" is identified prominently above as the "brand" of the oil. This is not a trademark usage, as much as affixing a company's address on a package is not a trademark use of that address: Admiration has not used "Supreme Oil Company" or "Supreme Oil Co." as a trademark, and before 2010 certainly had not used SUPREME or SUPREME OIL as trademarks.

Admiration cannot bootstrap its historical use of "A Supreme Oil Company" as a corporate name into legitimate rights in the trademark SUPREME entitling it to compete with Catania, years after Catania began using the mark SUPREME on edible oils.

To avoid confusion in the marketplace, Catania seeks an injunction prohibiting further trademark infringement by Admiration. As compensation for Admiration's past infringement, Catania seeks at least three times Admiration's profits associated with its use of the SUPREME mark, and/or Catania's own lost profits, as well as attorneys' fees and costs.

### B. Defendant's Position

Defendant, Counterplaintiff Supreme Oil Company, Inc. (hereafter "Supreme") objects to Catania's transparent ploy of referring to Supreme using the d/b/a "Admiration". Supreme will refer to itself using its corporate name.

Catania concedes prior use of SUPREME by Supreme, contending only that Supreme's corporate name did not give rise to protectability of SUPREME as a trademark. Yet Supreme used "SUPREME OIL CO." as a trademark, i.e., as a "house mark," on products since prior to Catania's use of SUPREME. (Defendant Counterplaintiff's Exhibit ("CDX") 1) Essentially

"trademark use" requires affixation of the mark to a product, while trade name use can be any other use. Thus, by imprinting "SUPREME OIL CO." on containers of edible oil, Supreme has complied with the requirements for technical trademark use.

Catania does not question Supreme's long prior use of its corporate name ("trade name" under the Lanham Act) "Supreme Oil Company, Inc." Catania admits that Supreme used A SUPREME OIL COMPANY[1]. For decades the word SUPREME has been emphasized.  Neither the article "A" nor business designation COMPANY/CO. negate the rights in SUPREME.  The doctrine of "tacking" for purposes of trademark priority is well recognized in two contexts – tacking a non-trademark use to a trademark use (sometimes referred to as "use analogous to trademark use"), and tacking a slightly varied form of use to a later use. In each context, the doctrine recognizes that it is trade identity that is key, not formalities of use. Essentially, Catania's only real argument must be that the Supreme's use of OIL for edible oils and a variety of related products, in some way negates its long use of SUPREME.

By the time Catania first shipped SUPREME-branded olive oil in 1974, it was aware of SUPREME.  Yet in support of Catania's trademark application, Catania's then-President Joseph Basile signed a Declaration — it is believed with full knowledge of Supreme's product bearing SUPREME OIL CO. — that "to the best of his knowledge and belief no other unrelated person, firm, corporation or association has the right to use said mark in commerce, either in the identical form or in such near resemblance thereto as to be likely, when applied to the goods of such other person, to cause confusion, or to cause mistake or to deceive".

Catania's application to register SUPREME for olive oil was refused, based on two registrations for SUPREME owned by Armour and Company, one for "lard and cottonseed oil

---

[1]  Catania mischaracterizes the trademark use on CDX 1 as "Supreme Oil Company" when it is SUPREME OIL CO.

for salads and cooking" and one for "oleomargarine." Catania responded by arguing that there were significant differences between those goods and olive oil:

> "In the instant case the applicant has sought registration of SUPREME for olive oil. The references cited against the applicant's mark are for the marks SUPREME used in one instance for lard and cottonseed oil for salads and cooking and in the other instance for oleomargarine. In light of the difference between the goods and in light of the obvious weak nature of SUPREME, the multiple registrations for SUPREME in the food field and in other fields, it is believed that no likelihood of confusion exists. Olive oil is not normally sold in the same area of a supermarket as is oleomargarine. Similarly, customers will generally distinguish olive oil from lard or cottonseed oil. Under these circumstances, reconsideration is solicited."

In sum, Catania (1) is a junior user of SUPREME; (2) signed a Declaration that no one had a right to use SUPREME in a manner, on goods, likely to cause confusion with Catania's use, despite being aware of Supreme's superior rights; (3) has stated that SUPREME is a weak trademark; and (4) has admitted that SUPREME olive oil can coexist, without likely confusion, with SUPREME cottonseed oil.  Although Catania may be expected to contend that its arguments made to the USPTO in 1975 no longer apply, even assuming *arguendo* that Catania has priority,  its SUPREME mark is laudatory and weak, its products are different than those of Supreme, and there is no likelihood of confusion as to source.

Catania's proof of likely confusion under these circumstances is untenable.   In light of Catania's knowingly false declaration, its Federal registration should be cancelled for fraud.   If Catania's registration fails, it is in the even worse position of relying solely on common law rights, but its junior use is fatal to common law rights.

The only "different" facts, when compared to the *status quo*, are that Supreme is using its SUPREME in an additional context:  a design or "logo" featuring a standing Chef pointing with a spoon at the word SUPREME in a particular type style and on a particular polygonal geometric shape with a red background, and the word OIL in smaller type, outside the polygon:



The Chef, polygon and words tie this usage to other Supreme trademarks.  Here Catania takes the logically inconsistent positions of: (1) Supreme cannot rely on SUPREME OIL CO. or its own Federally Registered A SUPREME OIL COMPANY because the words and designs in addition to SUPREME create a different impression, but (2) Catania can ignore the Chef, type style and geometric design and the word OIL when Catania asserts likelihood of confusion because they do not create a different impression. In short, Catania has cornered itself; it can win this case only if it can show that consumers find the words "OIL COMPANY" (or "OIL CO.") more distinctive than Supreme's unique, highly-stylized drawing of a chef, but only if that is after Catania began its use of SUPREME and not before.

If we assume that Catania was wrong in 1975 when it stated that there was no likelihood of confusion with any other mark, which included SUPREME OIL CO. at that time, was wrong that SUPREME is a weak trademark and that there was no likelihood of confusion resulting from concurrent use of SUPREME on olive oil and cottonseed oil, then its registration fails and Supreme's common law rights prevail.  If Catania was wrong then, then to protect consumers now Catania should halt use of SUPREME.

To avoid confusion in the marketplace, Supreme seeks an injunction prohibiting further trademark infringement by Catania. As compensation for Catania's past infringement, Supreme seeks at least three times Catania's profits associated with its use of the SUPREME mark, and/or Supreme's own lost profits, as well as attorneys' fees and costs.

## II.   JOINT PROPOSED SCHEDULE

The parties stipulate to the following pre-trial schedule and submit it for the Court's consideration:

1. Initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1): July 27, 2011;

2. Joinder of additional parties: August 12, 2011;

3. Other amendments to the pleadings: November 18, 2011;

4. Close of fact discovery: February 10, 2012;

5. The party with the burden of proof on an issue shall identify any expert(s) on that issue (including the disclosure of previous testimony and publications required by Fed. R. Civ. P. 26(a)(2)(B)(iv)-(v)): February 10, 2012;

6. The party with the burden of proof shall serve expert reports, if required, pursuant to Fed. R. Civ. P. 26(a)(2)(B): March 16, 2012;

7. Rebuttal expert reports: April 20, 2012;

8. Close of expert discovery: May 25, 2012; and,

9. Deadline for filing of dispositive motions: June 29, 2012.

## III.   OTHER DISCOVERY MATTERS

### A.   **Phasing of Discovery**

The parties do not seek to phase discovery at this time.

B.   **Form of Disclosures**

The parties agree to the following procedures and terms applicable to discovery of electronically stored information:

- Electronic files may be produced as text searchable PDF files created directly from the underlying native files, with resolution and format suitable for reading the contents when displayed electronically.

- Electronic files, such as Excel and PowerPoint files, will be produced in native format if a need for such a production is shown by the requesting party.

- If it appears that the volume of emails and other electronic documents to be produced by a party is significant, the parties will work in good faith to come to an arrangement that meets Catania's preference for the production of metadata, TIFF/JPG format files, and standard load files., which request shall be evaluated in good faith for reasonableness, privilege issues, and burden of production.

- Inclusion of metadata created by virtue of review or generation of files by counsel that identifies counsel shall not be interpreted to implicate waiver of any privilege

- Either party may request production or inspection of any original document and the producing party shall make reasonable efforts to accommodate such request.

- The parties will continue to meet-and-confer in good faith regarding any remaining details related to the production of electronically stored information or other documents.

C.   **Inadvertent Production of Privileged Material**

The parties request the Court enter an order concerning the inadvertent production of privileged or otherwise protected materials as follows:

The parties agree and the Court orders that inadvertent or unintentional disclosure by a party of information subject to a claim of attorney client privilege or work-product privilege shall not be deemed a waiver in whole or in part of the claim of privilege, either as to the specific information disclosed or as to any other information relating thereto.  Further, if a party (the "Producing Party") has inadvertently produced or disclosed documents or information subject to a claim of privilege, the party in receipt of such documents or information (the "Discovering

Party"), upon written request, shall within five (5) business days of the written request return the inadvertently produced documents or information, any documents reflecting, summarizing or otherwise derived from the inadvertently produced documents or information, and all copies thereof that may have been made, or certify to the Producing Party the destruction of such documents or information, any documents reflecting, summarizing or otherwise derived from the inadvertently produced documents or information, and all copies thereof.  The Discovering Party may apply to the Court for an order compelling production of such documents or information; however, in any such application, the Discovering Party may not rely on: (a) the argument that the Producing Party's inadvertent or unintentional disclosure resulted in a waiver; or (b) the contents of the inadvertently produced or disclosed documents or information.

To the extent documents are produced that contain metadata or other indicia of review, formatting, saving, or the like by counsel, the inclusion of that metadata will be treated as "inadvertent."

The Producing Party shall retain copies of all inadvertently produced documents or information for further disposition.  Within five (5) business days of the return or destruction of any inadvertently produced documents or information, the Producing Party shall provide a privilege log with entries for all returned or destroyed documents and/or items.

D. **Discovery Limitations**

The parties do not at this time seek to deviate from the discovery event limitations set forth in Local Rule 26.1(c), except that requests for production shall be limited to three  sets.

E. **Other Agreements**

The parties understand pursuant to Fed. R. Civ. P. 5(b)(2)(E) and Local Rule 5.4 that "all pleadings and other papers [including discovery] must be served on other parties by electronic means."  The parties agree that "electronic means" includes service by email on all undersigned

counsel for the served party and/or notifying a party via email to all undersigned counsel for the served party that the materials are available via FTP and making those materials available via FTP.  For production materials such as ESI or other documents, those materials may be produced on CD-ROMs, DVDs, flash drives, or other electronic storage media.  Production of an email "read" receipt can be used to rebut a contention of non-receipt by the served party.

### IV.     CERTIFICATION PURSUANT TO LOCAL RULE 16.1(d)(3)

The parties will file their certifications pursuant to Local Rule 16.1(d)(3) by July 18, 2011.

### V.     SETTLEMENT

Catania submitted a written settlement proposal to Defendant pursuant to Local Rule 16.1(c) on July 11, 2011.

### VI.     TRIAL BY MAGISTRATE

The parties do not consent to trial by a magistrate judge at this time.

Respectfully Submitted,

/s/ John L. Strand_____
Michael N. Rader (BBO #646990)
mrader@wolfgreenfield.com
David Wolf (BBO #532160)
dwolf@wolfgrenfield.com
John L. Strand (BBO #654985)
jstrand@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
Tel: (617) 646-8000

Attorneys for
CATANIA-SPAGNA CORPORATION

/s/ David C. Brezina_____
John L. Welch (BBO # 522040)
jwelch@LALaw.com
Nathan T. Harris (BBO # 675533)
nharris@LALaw.com
LANDO & ANASTASI, LLP
One Main Street, Eleventh Floor
Cambridge, MA 02142
Tel: (617) 395-7000

David C. Brezina
david.brezina@ladas.net
LADAS & PARRY LLP
224 South Michigan Avenue,
Suite 1600
Chicago, IL 60604
Tel: (312) 427-1300

Attorneys for
SUPREME OIL COMPANY, INC. d/b/a
ADMIRATION FOODS

Dated: July 15, 2011

- 11 -

**CERTIFICATE OF SERVICE**

      I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF).  Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

      /s/ John L. Strand_____
      John L. Strand

- 11 -

**CERTIFICATE OF SERVICE**

I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF).  Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

/s/ John L. Strand_____
John L. Strand